UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Raphael Mendez,

                Petitioner,

   vs.

Bureau of Prisons, M. Haugen,
M. Stalker, and FMC Rochester

                Respondents.        Civ. No. 08-4971 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Petitioner's Application for Habeas Corpus relief,

under Title 28 U.S.C. §2241.[1]  See, Docket No. 1.  The Petitioner, Raphael Mendez,

---

[1]We note that, as a result of the characterization of this action as a Petition for a
Writ of Habeas Corpus, the Petitioner has not named the proper Respondent.  The
proper Respondent in a Habeas Petition is the Petitioner's custodian, i.e., the Warden
of the Federal Medical Center, in Rochester, Minnesota ("FMC-Rochester").  See,
Rumsfeld v. Padilla, 542 U.S. 426, 435-36 (2004); Braden v. 30th Judicial Circuit
(continued...)

appears pro se, and the Respondents appear by Ana H. Voss, Assistant United States Attorney.     For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

## II.  Facts and Procedural Background

The Petitioner is currently detained as a Federal inmate at the Federal Medical Center, in Rochester, Minnesota ("FMC-Rochester"), for the care and treatment of a mental illness, pursuant to Title 18 U.S.C. §4246.  See, Declaration of Ann Norenberg ("Norenberg Decl."), Docket No. 16, at ¶2.  In this action, the Petitioner challenges the conditions of his confinement; namely his access to the Courts via his telephone privileges, and the legality of his detention in Federal custody.  See, Complaint, Docket No. 1, at pp. 3-4.  The Petitioner requests an Evidentiary Hearing, on the claims raised in his Petition and, for relief, we understand him to be requesting release from Federal custody.  Id. at p. 4.

By way of background, on February 27, 1990, the Petitioner was charged by the United States Attorney's Office, in the District Court of the Virgin Islands, with

---

[1](...continued)
Court of Kentucky, 410 U.S. 484, 495-96 (1973); United States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000).  However, the Petitioner has named FMC-Rochester, and given our recommendation, we find no need to address that defect further.

crimes of assault, possession of an unlicensed firearm during the commission of a violent crime, and possession of a firearm by a felon. See, <u>Declaration of Bernetta C. Miller ("Miller Decl.")</u>, <u>Docket No. 15</u>, Attachment A; <u>In re Mendez</u>, 2005 WL 1530220 at * 1 (3rd Cir., June 30, 2005), and <u>Petitioner's Exhibit</u>, <u>Docket No. 21</u>. While awaiting Trial on those charges, the Petitioner requested a psychological evaluation. See, <u>In re Mendez</u>, supra. He was committed to the Federal Medical Center, in Butner, North Carolina ("FMC-Butner"), for a Competency Hearing under Title 18 U.S.C. §4241,[2] and he was found incompetent to stand Trial. <u>Id.</u> Subsequently, on September 9, 1991, the District Court for the Eastern District of North Carolina (the "Committing Court"), found Mendez to be suffering from a

---

[2]Section 4241 provides as follows:

> At any time after the commencement of a prosecution for an offense * * * the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

mental disease or defect, and committed him to the custody of the Attorney General for care and treatment under Title 18 U.S.C. §4246.[3]  Id.

Since his initial commitment in 1991, the Committing Court has periodically reviewed the Petitioner's commitment.  See, Miller Decl., supra at Attachment A, Docket History.  On May 15, 1996, the Committing Court conditionally released Mendez from custody.  Id. at Docket No. 27.  On November 4, 2002, the Committing Court found that the Petitioner was in violation of his "conditional release and that his continued release would create a substantial risk of bodily injury to another person or serious damage to the property of another," and accordingly, the Court revoked his conditional release.  Id., at Attachment A, Order of November 2, 2002.  Since that revocation, the Petitioner has remained in the custody of the Bureau of Prisons.  See,

---

[3]In relevant part, Section 4246 provides as follows:

> (d)    If * * * the court finds by clear and convincing evidence that [a person in the custody of the Bureau of Prisons who has been found incompetent to stand trial] is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General * * * [and] the Attorney General shall hospitalize the person for treatment in a suitable facility.

Norenberg Decl., supra at ¶2.  The most recent review of his continued commitment was conducted on December 8, 2008, by the Committing Court, at which time, the Court found that the Petitioner continued to meet the criteria for civil commitment, pursuant to Title 18 U.S.C. §4246.  See, Miller Decl., supra at Attachment A, Docket Sheet,  Docket No. 8.

The Petitioner commenced the present action on July 28, 2008, by filing a self-styled pleading, in the United States District Court for the District of Columbia.[4]  See,

---

[4]Since his initial commitment, the Petitioner has filed a variety of actions and appeals, in North Carolina, the Virgin Islands, the District of Columbia, and in this Court.  See, e.g., United States v. Mendez, 968 F.2d 1212 (4th Cir., July 9, 1992)(affirming the District Court's Order committing the Petitioner to the custody of the Attorney General on appeal)[Table Decision], cert. denied, 506 U.S. 989 (1992); In re Mendez, 137 Fed.Appx. 502 (3rd Cir., June 30, 2005)(denying his Petition for a Writ of Mandamus requesting the District Court to order the Territorial Court of the Virgin Islands to rule on his pending Habeas Petition)[Table Decision]; United States v. Mendez, 238 Fed.Appx. 951 (4th Cir., July 16, 2007)(affirming the District Court's recent Order finding that the Petitioner continued to meet the criteria for commitment under Title 18 U.S.C. §4246); Raphael v. FMC-Rochester, 2007 WL 2320547 (D. Minn., August 10, 2007)(dismissing his action against the Warden of FMC-Rochester, and another prison employee for lack of subject matter jurisdiction); Mendez v. Britt, 2007 WL 1112593 (D. Minn., April 10, 2007)(dismissing an applicable to proceed in forma pauperis as the related Complaint failed to state an actionable claim); Mendez v. Anderson, Civ. No. 06-3307 (D. Minn., August 14, 2006)(JMR/RLE)(alleging violations of his constitutional rights arising under the Fifth, Eighth, and Thirteenth Amendments of the United States Constitution, by FMC-Rochester, and its employees); Mendez v. FMC-Rochester, Civ. No. 06-3711 (D. Minn., September 15, 2006)(JMR/RLE)(alleging forced medication in violation of his
(continued...)

Complaint, supra. Upon filing, the District Court for the District of Columbia reviewed the Petitioner's "Complaint," and characterized it as a Petition for a Writ of Habeas Corpus pursuant to Title 28 U.S.C. §2241. See, Transfer Order, Docket No. 3, at p. 1. The District Court then directed that the Petitioner's case be transferred to this District, for the reason that jurisdiction in a Habeas action is proper only in the District in which the Petitioner, and his immediate custodian, are located. Id. The Petitioner requested that the Court reconsider that transfer, which the Court subsequently denied. See, Order Denying Motion for Reconsideration, Docket No. 5. Accordingly, on August 19, 2008, the Petitioner's case was transferred to this District. See, Docket No. 6.

In his Complaint, the Petitioner alleges that, on May 28, 2008, the Respondents prevented him from placing a telephone call to the Virgin Islands Superior Court of St. Thomas. See, Complaint, supra at pp. 1-2. The Petitioner's stated purpose for the phone call was to verify that the Court had received the Mandamus Petition he had filed, which requested that the Honorable James S. Carroll, III, hold the Virgin Islands Prosecutor in contempt for failing to abide by the Judge's Order to Show Cause in his

---

[4](...continued)
rights). We do not, here, attempt to catalog all of his actions, as in this District alone, the Petitioner has commenced eight (8) separate legal proceedings, to date.

pending Habeas action.  Id. at pp. 2-3.  The Petitioner further alleges that, at the time of his request, the staff at FMC-Rochester were  unsure as to whether he should be allowed to make the telephone call.   Id.  According to the Petitioner, he was never allowed to make the call.  Id.  The Government has filed a Response,[5] which contends that the Petition should be dismissed for want of jurisdiction or,  alternatively, should be transferred to the District of North Carolina as the Court with competent jurisdiction.  See, Government's Response to Petition, Docket No. 14, at p. 1.

## III.  Discussion

A.    Motion to Recuse.

As a threshold matter, the Petitioner has filed an Affidavit, in which he requests a new Judge, on the ground that the undersigned, as well as the District Court, the Honorable James M. Rosenbaum presiding, are assertedly biased against him.  See, Affidavit, Docket No. 26.  We construe the Motion as one seeking Recusal.

---

[5]As an aside, in a filing with the Court dated December 11, 2008, the Petitioner claimed that he had not received the Government's Response.  See, Petitioner's Response to Order, Docket No. 19, p. 1.  However, the Petitioner subsequently acknowledged that, on December 15, 2008, he received the Government's Response. See, Petitioner's Response to Government's Response, Docket No. 20, p. 1. Furthermore, we note that the Petitioner also appears to allege that the Government has submitted false information in its filings.  Id. at p. 1-2.  However, it is not clear what information he is challenging as inaccurate, except as to the nature and validity of his custody.  Id.

In assessing a Motion for Recusal, or Disqualification, Title 28 U.S.C. §455(a) provides as follows:

> Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

"The test for disqualification or recusal is an objective one and asks whether, from the perspective of 'the average person on the street,' a reasonable man knowing all of the circumstances 'would harbor doubts about the judge's impartiality.'" Tyler v. Purkett, 413 F.3d 696, 704 (8th Cir. 2005), quoting United States v. Poludniak, 657 F.2d 948, 954 (8th Cir. 1981)[citations omitted].

"A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise." Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003), quoting Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992)[citations omitted].  Lastly, "[a]n adverse ruling does not constitute a sufficient basis for disqualification without a clear showing of bias or partiality." Id. at 665, citing Liteky v. United States, 510 U.S. 540, 555 (1994); see also, Dossette v. First State Bank, 399 F.3d 940, 953 (8th Cir. 2005)("Adverse judicial rulings * * * 'almost

never' constitute a valid basis for recusal; the proper recourse for a dissatisfied litigant is appeal."), citing <u>Liteky v. United States</u>, supra at 555.

Here, the Petitioner offers no reasonable basis for our recusal or disqualification, or for the recusal or disqualification of the District Court. At most, he expresses dissatisfaction with our prior rulings in certain of his other cases. See, <u>Affidavit</u>, supra at p. 2. He also asserts that we improperly denied his <u>in forma pauperis</u> ("IFP") Application. <u>Id.</u> at p. 3. However, we have already permitted the Petitioner to proceed IFP, so this allegation is also without merit. See, <u>Order</u>, <u>Docket No 9</u>.

While we understand that the Petitioner may well be disappointed by our prior rulings on the merits of certain of his past claims, our obligation is to apply the law, and rule accordingly. Notably, none of those rulings have been reversed for error. Here, however, all that the Petitioner has offered to contest our future handling of this matter is an assertion that we have ruled against him in prior cases. We bear no ill-will or antagonism toward the Petitioner, nor any favoritism toward the Respondents -- we simply base our rulings on the facts, and the law, which is all that any litigant can expect. It matters not to this Court which party is successful on any question or

issue to be decided. We are obligated to rule on any issue presented on the basis of the law which governs this Court, and we take that obligation seriously.

In sum, the Petitioner has offered nothing, other than the fact of our prior adverse rulings in certain of his past lawsuits, to support his contention of bias. As such, the Petitioner offers nothing that would cause an average person to reasonably question our impartiality. See, <u>Tyler v. Purkett</u>, supra at 704, citing <u>United States v. Poludniak</u>, supra at 954. As our Court of Appeals has expressly recognized, "a judge has as much obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true." <u>United States v. Greenspan</u>, 26 F.3d 1001, 1005 (8th Cir. 1994), citing, <u>City of Cleveland v. Cleveland Elec. Illuminating Co.</u>, 503 F. Supp. 368, 370 (N.D. Ohio 1980). Accordingly, we recommend that the Petitioner's Motion for Recusal be denied.

B.   <u>Availability of Relief Under Title 28 U.S.C. §2241</u>.

1.   <u>Standard of Review</u>. Federal Habeas provides a remedy only for prisoners challenging the fact or duration of their custody, rather than the conditions of their confinement. See, <u>Kruger v. Erickson</u>, 77 F.3d 1071, 1073 (8th Cir. 1996)("If the prisoner is not challenging the validity of his conviction or the length of his detention * * * then a writ of habeas corpus is not the proper remedy."); see also, <u>Otey</u>

v. Hopkins, 5 F.3d 1125, 1130 (8th Cir. 1993), cert. denied, 512 U.S. 1246 (1994)("The central focus of the writ of habeas corpus is to provide a remedy for prisoners who are challenging the fact or duration of their physical confinement and are seeking immediate release or a speedier release."); Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991)("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement * * *[;] [a] civil rights action, in contrast, is the proper method of challenging 'conditions of * * * confinement.'")[internal citation omitted].

2.      Legal Analysis.   As the outset, we address the propriety of characterizing the Petitioner's action as a Petition for a Writ of Habeas.  Given the Petitioner's pro se status, we recognize that his pleadings are to be construed indulgently.  See, Archuleta v. Hedrick, 365 F.3d 644, 648 (8th Cir. 2004), citing Young v. Armontrout, 795 F.2d 55, 56 (8th Cir. 1986).  While the Petitioner denominated his pleading as a "Complaint," we understand him to be challenging both the conditions of his confinement, as we later detail, and the legality of his detention in Federal custody.  See, Complaint, supra at pp. 1-4.  However, given a construction to the totality of his claims, we conclude that the gravamen of the Petitioner's filing

is a challenge to the validity of his custody and, as such, the Petitioner makes the following request in relation to his claims:

> I want [to be] * * * RETURNED to Docket No. 09-Cr-43 for a HEARING in the Virgin Islands Territorial court of PROPER Jurisdiction * * * and I would want [to be] * * * AWARDED for IMPROPERLY COMMITTING me by HABEAS CORPUS to a Federal custody for violation solely of Virgin Islands Criminal code.

Id. at p. 4 [emphasis in original].

Notably, the Petitioner is not seeking money damages, or injunctive relief, in relation to any of his claims and, notwithstanding his characterization of his action, and the dual nature of his claims, we conclude that the action is properly treated as a Petition for a Writ of Habeas Corpus, owing to its primary purpose, which is his release from custody. See, Kruger v. Erickson, supra at 1073 ("The prisoner's label cannot be controlling," as "[i]t is the substance of the relief sought which counts."), citing Preiser v. Rodriguez, 411 U.S. 475 (1973).

As a consequence, we turn to the Petitioner's first claim, which pertains to his phone privileges at FMC-Rochester. The Petitioner alleges that the Respondents violated his rights when they prevented him from calling the Virgin Islands Superior Court, and therefore, the Respondents argue that a Habeas Petition, pursuant to

Section 2241, is an inappropriate vehicle for pursuing the Petitioner's claim. We agree.

Here, it is readily apparent that the Petitioner's claim, with respect to his phone privileges, challenges the conditions of his confinement rather than the fact or duration of that confinement. The Petitioner appears to claim that the Respondents, by preventing him from making the requested telephone call, have prolonged his unlawful detention. See, <u>Complaint</u>, supra at p. 3. While the Petitioner may sincerely believe that the phone call would have allowed him to further his attempt at securing a release from custody, that belief does not substantively convert his claim into one cognizable in a Habeas proceeding. See, <u>Preiser v. Rodriguez</u>, supra at 484 (noting "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody.").

The Petitioner's telephone privileges, regardless of the purpose to which they are put, simply have no direct bearing on the legality or duration of his custody. See, <u>Martin v. Mooney</u>, 2007 WL 1306409 at *20 (D. Minn, May 3, 2007)(holding that the petitioner's claim that he was deprived of legal paperwork must be brought in a civil rights action, as a challenge to the conditions of confinement, rather than as a Habeas

proceeding.).    Notably, this is **not** a case where a prison policy affects the computation of good time credit, thereby directly affecting the duration of the Petitioner's confinement.  See, <u>Davis v. Norris</u>, 230 Fed.Appx. 636, 636-37 (8th Cir. 2007) (holding that a challenge to the loss of good time credits must be brought in a Habeas proceeding); <u>Sheldon v. Hundley</u>, 83 F.3d 231, 233 (8th Cir. 1996)(concluding that a challenge to a disciplinary action, which results in a loss of good time, must be remedied in a Habeas proceeding.).  Accordingly, to the extent that the Petitioner claims that the denial of telephone privileges has violated his rights, we find that we cannot properly remedy that asserted violation in a Habeas proceeding.

Of course, we do not so much as suggest that there are no legal remedies, of any kind, for the type of claim that the Petitioner is attempting to assert.  If he believes that his rights under Federal law, or the Constitution, have been violated, he may be entitled to seek relief in a traditional civil action -- i.e., a non-Habeas action.  In particular, he might be able to bring a civil rights action under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), although we express no view as to the likelihood of success on such a claim.  We simply hold that, to the extent that the Petitioner is challenging his telephone privileges at FMC-

Rochester, he must bring that claim as a civil rights action. Therefore, we recommend that his claim, as it relates to his telephone privileges, be denied without prejudice, and we turn to his remaining claim.

2.    Claim of Unlawful Detention in Federal Custody.

a.    Jurisdiction over the Habeas Petition. As a threshold matter, we first address our jurisdiction over the Petitioner's Habeas action, with respect to his remaining claim.[6] The Respondents contend that we must dismiss, or transfer, the Petitioner's Habeas action, because the Committing Court is the only tribunal that may hear his challenge to the validity of his custody. See, Respondent's Reply Memorandum, supra at pp. 6-7.

After a careful consideration of the jurisdictional issue, we conclude that this Court can properly exercise jurisdiction over the Petitioner's Habeas action. At the outset, we note that "[n]othing contained in Section * * * 4246 * * * precludes a person * * * from establishing by writ of habeas corpus the illegality of his detention."

---

[6]In his Reply, the Petitioner requests that his claims be heard in the District Court for the District of Columbia. See, Petitioner's Traverse, Docket No. 20, at p. 1. However, the District of Columbia has already held that it does not have jurisdiction over the matter, see, Transfer Order, supra, and therefore, we find his request to be without merit.

Title 18 U.S.C. §4247(g).  Moreover, it is well-established that a Federal Habeas Petition should generally be filed in the District of confinement.  See, <u>Rheuark v. Wade</u>, 608 F.2d 304, 305 (8th Cir. 1979)(because the Writ of Habeas Corpus acts upon the person holding the petitioner in unlawful custody, jurisdiction lies in the District of confinement or the District of the custodian); <u>Propotnik v. Putman</u>, 538 F.2d 806, 807 (8th Cir. 1976)(finding that a Habeas Petition was properly dismissed for lack of jurisdiction where the petitioner was not confined in the District where he filed his Petition); <u>Bell v. United States</u>, 48 F.3d 1042, 1043 (8th Cir. 1995) (petitioner must file his Habeas Petition in the District with jurisdiction over his custodian).  Here, both the Petitioner, and his immediate custodian, reside in this District.  Accordingly, we find ample authority supporting our jurisdiction over the Petitioner's Habeas Petition.

Moreover, we find the Respondents' reliance on <u>United States v. Copley</u>, 25 F.3d 660 (8th Cir. 1994), to be unpersuasive.  There, the Court of Appeals for the Eighth Circuit analyzed a District Court's jurisdiction over a revocation of conditional release, pursuant to Title 18 U.S.C. §4246(f).[7] <u>Id.</u>  The court determined that the

---

[7]Section 4246(f) reads, in relevant part, as follows:

The director of a medical facility responsible for
(continued...)

Committing Court was the only Court that could properly exercise jurisdiction over a revocation proceeding. See, United States v. Copley, supra at 662. Here, however, we are presented with a Habeas proceeding, rather than a proceeding instituted pursuant to the Commitment Statute. Thus, we find the holding in Copely to be inapposite.

Of course, as a matter of discretion, Courts may decline to exercise jurisdiction over Habeas Petitions filed in the District of confinement, where the claim would be more properly heard in the Court that ordered the confinement under Section 4246. See, Blohm v. Reese, 2002 WL 1949915 at *3 (D. Minn., August 19, 2002) (declining to exercise Habeas jurisdiction as a matter of "discretion and comity," where the Committing Court had a greater familiarity with the facts of the claim, and there was no evidence that that Court would not provide a "fair opportunity to be heard"); see

---

[7](...continued)
administering a regimen imposed on a person conditionally discharged under subsection (e) shall notify the Attorney General and the court having jurisdiction over the person of any failure of the person to comply with the regimen. Upon such notice [and arrest, the person] shall be taken without unnecessary delay before the court having jurisdiction over him. The court shall, after a hearing, determine whether the person should be remanded to a suitable facility * * *.

also, <u>Archuleta v. Hedrick</u>, supra at 644 (finding that a transfer of a Habeas Petition to the committing District was appropriate where that Court could take jurisdiction as a matter of discretion).

However, since the Petitioner's claims have already been transferred to this Court, from the District of Columbia, we do not find that, in the present case, it would be appropriate to transfer, or to dismiss the case. We note that the Court, in <u>Blohm v. Reese</u>, supra, relied upon a line of cases which held that an inmate, who challenges his present mental competency in a Habeas Petition, must first petition the Committing Court for relief. <u>Id.</u>, citing <u>Seelig v. United States</u>, 310 F.2d 243 (8th Cir.1962); <u>Johnson v. Settle</u>, 310 F.2d 349 (8th Cir.1962), cert. denied, 372 U.S. 979 (1963); <u>Birnbaum v. Harris</u>, 222 F. Supp. 919 (W.D. Mo.1963). Furthermore, in <u>Archuleta v. Hedrick</u>, supra at 648, the Petitioner was also claiming, at least in part, that he was eligible for conditional release under the Statute.

Here, the Petitioner is not challenging his present mental condition, nor is he claiming that he is eligible for conditional release. Rather, he simply contends that he was never properly charged with a Federal crime, thereby invalidating any commitment proceeding that proceeded from his initial custody. Since our determination of the merits of the Petitioner's claim does not tread upon the

conclusions of the Committing Court, we conclude that exercising jurisdiction over this matter would be proper.

Moreover, we are not persuaded, as the Respondents appear to contend, that the Commitment Statute requires Habeas matters, regardless of whether they challenge mental competency, to be brought in the District of the Committing Court. See, <u>Title 18 U.S.C. §4246</u> (when the custodian believes that the person "has **recovered from his mental disease or defect**" such that release is warranted, then "he shall promptly file a certificate***with the clerk of court of the court that ordered the commitment."). While the Committing Court can exercise such discretion, we find no authority, in that Statute, which would require a Habeas claim to be filed with the Committing Court. Therefore, we conclude that it would be appropriate, under the circumstances, to substantively address the Petitioner's claims, as we find that neither the interests of justice or judicial economy, would be served in further delay so as to defer the resolution of this matter to another day, or another Court, and we proceed to the substance of the Petitioner's claim.

b. <u>Legality of the Petitioner's Federal Detention</u>. "The writ of habeas corpus shall not extend to a prisoner unless * * * [h]e is in custody in violation of the Constitution or law or treaties of the United States." <u>Title 28 U.S.C. §2241(c)</u>.

"The writ of habeas corpus  functions to grant relief from unlawful custody or imprisonment." <u>Campillo v. Sullivan</u>, 853 F.2d 593, 595 (8th Cir. 1988), cert. denied, 490 U.S. 1082 (1989); see also, <u>Archuleta v. Hedrick</u>, supra at 647.  Here, however, the Petitioner has not raised a claim that  would entitle him to relief, since he has failed to show that he is in custody in violation of any law.

While somewhat difficult to understand, we believe the gravamen of Petitioner's argument is that he was never lawfully in Federal custody because he never committed a Federal offense, so that, as a result, his commitment proceedings, and his continued commitment, were unlawful.[8]  In support of that contention, the Petitioner cites <u>Parrott v. Government of Virgin Islands</u>, 230 F.3d 615 (3rd Cir. 2000).

---

[8]Since the issue was not briefed, and because of the Recommendation we make, we benignly overlook the high probability that the current Petition is an abuse of the Writ, as the Petitioner's contention, that the Federal Courts have no jurisdiction over him, owing to his conviction under the territorial laws of the Virgin Islands should have been raised in a prior Petition, if, in fact, it was not previously raised.  See, e.g., <u>Mendez v. United States</u>, 2004 WL 3327911at *2 (E.D.N.C., December 27, 2004)("His current claim is that because his original commitment order was entered by the District Court of the Virgin Islands, the district court for the Eastern District of North Carolina lacks jurisdiction over his conditional release," and "[t]o the extent that this claim has already been adjudicated at petitioner's hearing on his prior petition, his current claim would again be considered an abuse of the writ."), aff'd, 126 Fed.Appx. 148 (4th Cir. 2005).  In that earlier Habeas proceeding, the Court noted that, "[p]rior to his current action, petitioner filed at least seven other habeas petitions."  <u>Id.</u> at n. 2.

In this respect, we understand the Petitioner to claim that <u>Parrott</u> establishes that the Federal Government did not have the power to take custody of him for violations of local criminal law, see, <u>Complaint</u>, supra at p. 4, but we fundamentally disagree with that proposition.

First, we note that <u>Parrott</u> has no relevance to the validity of the Petitioner's custody. In <u>Parrott</u>, the Court of Appeals for the Third Circuit discussed, in detail, the evolving relationship between the Federal District Court, and the Virgin Islands Territorial Court. <u>Parrott v. Government of Virgin Islands</u>, supra. The Court noted that, in 1991, the Virgin Islands Legislature vested jurisdiction over purely local civil matters in the Territorial Court and, in turn, in 1994, it vested jurisdiction over purely local criminal matters, solely in the Territorial Court. <u>Id</u> at p. 622, citing <u>4 V.I. Code §76(a)-(c)</u>. Prior to those changes, the District Court for the District of the Virgin Islands had exercised original jurisdiction over purely local criminal matters. <u>Id.</u> As pertinent here, the Petitioner filed a Petition for a Writ of Habeas Corpus, and the issue raised was whether the revisions operated to divest the District Court of jurisdiction over Habeas proceedings, which were premised on criminal convictions that arose solely from territorial law. <u>Id.</u> at 617. The Court held that the revisions did divest the Court of jurisdiction over such Habeas proceedings. <u>Id.</u>

Given the substance of that case, we find that <u>Parrott</u> does not call into question the legality of the Petitioner's custody.  First, the case deals with the District Court's jurisdiction over cases, rather than the United States Attorney's, or the Federal Government's, authority to prosecute an individual.  Moreover, our survey of the case law has uncovered no authority that so much as suggests that the Federal Government was not authorized to institute criminal proceedings against the Petitioner for violations of territorial law.  See, <u>Title 48 U.S.C. §1617</u> (The United States Attorney for the Virgin Islands  "shall also prosecute in the district court in the name of the government of the Virgin Islands all offenses against the laws of the Virgin Islands which are cognizable by that court."); <u>United States v. Tutein</u>, 122 F. Supp.2d 575, 578 (D. V.I. .2000)(noting that the United States Attorney is authorized to bring charges for violations of the territorial law); <u>Government of the Virgin Islands v. Christensen</u>, 673 F.2d 713, 721 n. 2 (3rd Cir. 1982) (noting that the United States has been given the authority to prosecute purely local offenses in the Virgin Islands).

Furthermore, the statute does not require that commitment be premised upon a Federal crime.  Rather, the statute merely requires an offense, without reference to the source of the law.  See, <u>Title 18 U.S.C. §4241</u> ("At any time after the commencement of a **prosecution for an offense** and prior to the sentencing of the

defendant * * * the defendant **or the attorney for the Government** may file a motion

for a hearing to determine the mental competency of the defendant.")[emphasis

added].  As a result, we find no law that calls into dispute the authority of the Federal

Government to prosecute local offenses in the Virgin Islands, and no authority that

requires that civil commitment proceedings be conducted only as to Federal crimes.

Thus, we conclude that there is no competent basis for holding that the Petitioner's

custody violates the law.[9]  Accordingly, we find the Petitioner's claim to be wholly

---

[9]In his Traverse, the Petitioner also  cites to <u>United States v. Marino</u>, 148 F. Supp. 75, 76 (N.D. Il.  1957), for the proposition that the Federal Government did not have the authority to take custody over him.  However, we find the Petitioner's argument again fails, as that case does not call into question the Federal Government's power, during the relative time period, to take the Petitioner into custody.  Rather, <u>Marino</u> invalidated a commitment made where the Indictment failed to state an offense.  <u>Id.</u> It is true that the Court does, as the Petitioner claims, state that, "[i]f there is no federal offense there is no power [to commit]," <u>id.</u>, but we do not read that to mean, nor does the statute support such a reading, that the Federal Government may only civilly commit those who have been charged with a Federal offense.  Rather, the touchstone of the Government's power to commit, pursuant to Section 4246, is the legality of the Government's custody, in the first place.  Therefore, we read <u>Marino</u> to hold that the Government never held lawful custody over the defendant because it had not charged the defendant with a valid Federal crime.

Here, the Petitioner's custody is premised not upon the commission of a Federal crime, but rather, upon the Federal Government's power, at the time of the initial commitment, to prosecute for violations of the territorial laws of the Virgin Islands. Accordingly, we find no merit in the Petitioner's reliance on that case.  The relevant inquiry is not whether the person in custody committed a Federal offense, but whether
(continued...)

without merit, as he has demonstrated no violation of Federal law that would justify

his release and, on this Record, he has failed to raise any genuine question concerning

the legality of his custody.   Therefore, we recommend that the Petitioner's request for

a Writ of Habeas Corpus be denied.

---

[9](...continued)
the Government had the valid authority to prosecute that person.  We find that it did.
See, United States v. Tutein, 122 F. Supp.2d 575, 578 (D. V. I.  2000)(noting that the
United States Attorney is authorized to bring charges for violations of the territorial
law); see also, Title 48 U.S.C. §1617 (The United States Attorney for the Virgin
Islands  "shall also prosecute in the district court in the name of the government of the
Virgin Islands all offenses against the laws of the Virgin Islands which are cognizable
by that court.").   Accordingly, we find the Petitioner's argument, that he was never
lawfully in Federal custody, to be entirely without merit.

C.      Request for an Evidentiary Hearing.

The Petitioner has requested an Evidentiary Hearing on the issues raised in his Petition, but we find that such a Hearing is not warranted, as we find no factual disputes which would require further development, or testimony.  As we have already discussed, the issue is whether, as a result of the charges originating in 1990, the Petitioner was lawfully in Federal custody.  However, the Record shows that the Petitioner, and the Government, are in agreement that he was not charged with any Federal offense, but rather, was charged with violations of the territorial laws of the Virgin Islands.  See, Government's Response, supra at p. 2 ("Mendez was charged in the District Court of the Virgin Islands **with crimes arising under territorial law**"), and Petitioner's Traverse, supra at p. 3.[10]  Moreover, we have already concluded, as a matter of law, that it makes no difference, with respect to the legality of his current custody, that he was charged with a violation of territorial law, rather than a Federal offense.   Therefore we find no need for an Evidentiary Hearing, as the Petitioner's claims are clearly without merit as a matter of law, and there is no factual dispute.

---

[10]The Petitioner appears to claim that the Government has submitted false information to the Court, in its assertion that he has committed a Federal offense.  See, Petitioner's Traverse, Docket No. 20, at p. 3.  As it is clear that the Government has not made any such a claim, we reject the assertion outright.

See, <u>Toney v. Gammon</u>, 79 F.3d 693 (8th Cir. 1996)(noting that an Evidentiary Hearing is warranted when the Petitioner alleges "sufficient grounds for release [and] , relevant facts are in dispute"), citing <u>Wilson v. Kemna</u>, 12 F.3d 145, 145 (8th Cir. 1994); <u>Amos v. State of Minnesota</u>, 849 F.2d. 1070, 1072 (8th Cir. 1988), cert. denied, 488 U.S. 861 (1988) (noting that "an evidentiary hearing is unnecessary and not required in cases 'where the petitioner's allegations, even if true, fail to state a claim upon which habeas relief can be granted'"), citing <u>Brown v. Lockhart</u>, 781 F.2d 654, 656 (8th Cir. 1986). The Petitioner has simply not raised an issue that would require the taking of additional evidence, and accordingly, we recommend that his request for an Evidentiary Hearing be denied as well.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Petitioner's Petition for a Writ of Habeas Corpus [Docket No. 1] be denied.

2.      That the Petitioner's Motion to Recuse [Docket No.26] be denied

Dated:  October 8, 2009                _s/Raymond L. Erickson_

                                                Raymond L. Erickson
                                                CHIEF U.S. MAGISTRATE JUDGE

# N O T I C E

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by **no later than October 26, 2009**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 26, 2009**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.